[Civ. No. 8214.   Third Dist.   Oct. 13, 1953.]

ORSON A. MOODY, JR., et al., Plaintiffs and Appellants, v. LIONEL E. OSBORNE et al., Respondents; C. M. POMEROY, Defendant and Appellant.

E. L. Means and James F. Roach for Plaintiffs and Appellants.

F. H. Bowers for Defendant and Appellant.

Lynne Kelly and C. Schiffner for Respondents.

PEEK, J.—This is an appeal from a judgment in favor of defendants Osborne, hereinafter referred to as the sellers, in an action instituted by plaintiffs Moody, hereinafter referred to as the purchasers, for specific performance of a deposit receipt agreement for the sale of real and personal property.

In November 1949 the sellers executed a written authorization or listing with the defendant and cross-complainant Pomeroy, hereinafter called the agent, which provided in part as follows: ''In consideration of the services of C. M. Pomeroy, broker, hereinafter called the agent, I hereby list with said agent exclusively and irrevocably for a period to March 15, 1950, at 12 noon, the following described property . . .''

Although the record contains testimony by the sellers that prior to the execution of the authorization they had advised the agent that they wanted $20,000 plus assumption of a $5,700 encumbrance, exclusive of broker's commission, the agent contradicted this testimony asserting that said encumbrance was included within the purchase price. In any event the sellers admitted signing the listing but contended that it was done without reading it since Mr. Osborne was ill at the time. On or about January 13, 1950, a California real estate association standard form deposit receipt agreement was executed by all of the parties, which document was revised on or about January 23, 1950. The purchasers at that time gave a check in the sum of $250 as deposit on account of the purchase price of $22,250, including the encumbrance then on the property. The agreement further provided that the first installment of $4,500 was due on or before February 6, 1950. The second installment of $3,500 was payable on or before June 15, 1950, and specific provisions were made covering the balance. Additionally the agreement provided in paragraph 6 ''that the essence of this agreement is time and the undersigned real estate agent may. without notice, extend the time for an additional period of thirty days should said agent deem the extension advisable. . . .''

The sellers testified they objected to an alleged erroneous

statement of the purchase price in the deposit receipt as not including the farm loan and only signed the document upon the agent's promise that the same would be corrected to show the assumption and payment of the loan in addition to the $22,250. They further testified that during the latter part of January and the early part of February, 1950, they telephoned to the agent on numerous occasions ordering him to discontinue any further activities and that they did not desire to proceed with the transaction.

Some time prior to February 6, 1950, the due date for the payment of the $4,250, the purchasers met with the agent, informing him they were having difficulty in meeting that date line. Thereupon in accordance with the provisions of said paragraph 6 the agent extended the time for making said payment to February 17, 1950. On that date the agent and his wife loaned the purchasers $3,500, taking back a promissory note secured by a deed of trust on certain real property owned by the purchasers in Yolo County. As a part of that same transaction the purchasers gave to the agent their check in the sum of $750, thereby completing the payment then due. Two days later the agent drove to the sellers' ranch advising them the property had been sold and offered them a check in accordance with the terms of the agreement. However, the sellers refused to accept the payment and the agent then placed the money on deposit with the Placer County Title Company, subject to the sellers' order. From the money so deposited the agent deducted his commission of $2,250.

On February 22d, the purchasers received a telephone call from the sellers declaring the contract void and that their doctor had ordered Mr. Osborne not to sell the ranch. Subsequently on June 9th, and prior to the date called for in the agreement, the purchasers again deposited with the Placer County Title Company for the sellers' account, the sum of $3,500 due on June 15th. Upon the sellers' refusal to convey the property the purchasers instituted these proceedings naming both the owners and the agent as parties defendant. The answer of the sellers denied generally the material allegations of the purchasers' complaint and affirmatively alleged the statute of frauds.

The answer of the agent admitted the allegations of the complaint, joined with the purchasers' prayer for specific performance of the agreement, and prayed for judgment for his commission.

The trial court found that the contract and the description of the property were as alleged by plaintiff and that the price was fair and reasonable but in addition it also found that the agent exceeded his authority in extending the time for the first payment without the knowledge or consent of the sellers; that the agent was duplicitous in making the loan to the purchasers which likewise was without the knowledge or consent of the sellers; all of which resulted in an attempted modification of the terms of the agreement.

From the memorandum opinion of the trial court it appears that this conclusion was based upon one of two alternatives, either of which, the court concluded, was fatal to recovery by plaintiff, that is, first, that Pomeroy at all times remained the agent of the sellers and therefore when he loaned money to the purchasers he did so as the purchasers' agent, and hence for that reason only $1,000 in cash was tendered to them, the balance being represented by a note and trust deed. And since the purchasers did not repay the note to Pomeroy until the following August there resulted an extension of credit for a term of approximately five months, and second, that since at all times Pomeroy was the agent for the sellers, by his acts in personally loaning to the purchasers the amount of the down payment, he thereby placed himself in a duplicitous situation.

Respondents, however, take a different view and in support of the judgment first argue that the description of the property was so insufficient that such defect in and of itself would warrant a judgment in their favor. And secondly, that the agent, in attempting to force his principal, the sellers, to convey to the purchasers upon the terms and conditions, which they contend were inimical to their welfare, thereby violated the highly fiduciary relationship existing between themselves as principal and himself as their agent.

As to the first point made by respondents the evidence shows, without contradiction, and the court found, that the property was examined by the parties and was verbally agreed by them "to be the same as described in the complaint." Thus no one was misled nor was any one in doubt as to what property was involved nor was there any question but that the Osbornes were selling the entire ranch. (*Wright* v. *L. W. Wilson Co., Inc.,* 212 Cal. 569 [299 P. 521].)

Furthermore there can be no question but that by the terms of the deposit agreement, which all of the parties signed, the agent specifically was given the right "without notice [to]

extend the time for an additional period of thirty days" should he "deem the extension advisable." Hence when he did so extend the time for the purchasers to make their original payment (but not beyond the period specified in the agreement), he was clearly within the scope of the authority so conferred upon him.

█ Neither can it be said that in personally loaning money to the purchasers in order for them to complete the transaction that he was duplicitous in his dealings. The source of the funds with which such payment was made was of no particular import so far as the sellers were concerned. The fact that it was from funds advanced by the agent did not make the transaction fraudulent as to the sellers. (8 Am.Jur. 1067; *Hicks* v. *Wilson*, 197 Cal. 269 [240 P. 289].) It should be noted that the payment tendered to the sellers was not by note but was by check signed by the agent.

It necessarily follows that since the purchasers and the agent performed all that was required of them by and in accordance with the terms of the contract, the purchasers are entitled to specific performance of the contract and the agent is entitled to his commission.

The judgment is reversed.

Van Dyke, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied November 9, 1953, and respondents' petition for a hearing by the Supreme Court was denied December 10, 1953. Shenk, J., Carter, J., and Schauer, J., were of the opinion that the petition should be granted.