[Civ. No. 7918. Fourth Dist., Div. One. Aug. 31, 1966.]

MARVIN F. TACKETT et al., Plaintiffs and Respondents, v. H. A. CROONQUIST et al., Defendants and Appellants.

Robert S. Walwick and William C. Wetherbee for Defendants and Appellants.

Fredman, Karpinski, Silverberg & Shenas and Charles E. Karpinski for Plaintiffs and Respondents.

WHELAN, J.—Defendants appeal from a judgment imposing liability for negligent misrepresentations following a nonjury trial.

██ Plaintiffs Marvin F. Tackett (Tackett) and Elizabeth S. Tackett were owners of a motel property encumbered by trust deeds. They advertised it for sale or exchange. About the same time, one Lohr furnished to defendant Croonquist, a licensed real estate broker, the description of 73 acres of unimproved land that Lohr owned and wished to sell or exchange, on which he placed a value of $1,000 per acre. Defendant Carter was a licensed real estate salesman working out of Croonquist's office, who was asked by the broker to look at the acreage, which was shown to him by Lohr. Lohr and Carter both had seen plaintiffs' advertisement and Lohr, after seeing the advertisement, looked at the motel. Carter inquired of Tackett by telephone if the latter might be interested in an exchange for the acreage. An appointment was made, following which Carter showed Tackett what Carter believed was the northeast corner of a 40-acre parcel included in the total of 73 acres; the true corner of the 40-acre parcel was in fact almost 1,320 feet south and some distance east of the monument pointed out to Tackett. Twenty other acres of the 73-acre total were related in position to the 40-acre parcel so that their true location was different from what it would have been if the northeast corner of the 40-acre tract had been as pointed out by Carter.

Carter did not at any time deny that he had pointed out the corner as testified by Tackett, but claimed that it was the corner pointed out to him by Lohr, who owned all the property involved.

Lohr signed an offer to exchange the 73 acres for the motel. The offer contained a provision for payment by him of a commission to Croonquist, who, by the terms of the offer, was described by Lohr as "my agent in negotiating said exchange." Plaintiffs, believing that the 73 acres contained all of the 40-acre parcel, the northeast corner of which had been pointed out to them, and the related 20 acres, signed an acceptance of the offer, in which they agreed to pay Croonquist a commission of $8,500 for services rendered.

An escrow was opened, the instructions for which mentioned commissions to be payable by both parties to the exchange.

After the exchange had been consummated, Tackett sold some of the acreage before discovering the error in location of most of what he had acquired. He was engaged in improving some of the 60 acres that he mistakenly thought was his own when the error was pointed out to him.

Plaintiffs were given judgment against Croonquist and Carter for the difference in value between what they received and what they gave in exchange, for the amount of commission paid, and for the amount spent in improvement of the property they erroneously thought was their own.

### Alleged Grounds of Appeal

Defendants contend (1) that a wrong measure of damages was applied based upon the difference in value of only a portion of the properties shown to Tackett and of those received by him, and that the evidence does not support the award on that point; and (2) that the judgment for the recovery of the commission paid by plaintiffs was erroneous.

### Plaintiffs' Theory of the Case

The original complaint, in which Lohr also was a defendant, sought rescission based upon fraud and mutual mistake, or, alternatively, damages for fraud, and for a failure to convey in accordance with the agreement of exchange.

The filing of a subsequent pleading by plaintiffs, entitled "Amended Complaint," raised a question as to whether the original complaint had been completely superseded, a question settled by the trial court in confirming the assumptions of all parties that the "Amended Complaint" was intended as a supplemental complaint and in allowing at the conclusion of the trial, without serious opposition, the filing of an "Amendment to Complaint" to conform to proof which incorporated by reference portions of the original complaint. It alleged that

Croonquist and Carter acted as agents of plaintiffs "and were under a duty as fiduciaries to plaintiff." It contained an allegation that as a result of the payment by plaintiffs of the commission, defendants were unjustly enriched in the sum of $8,500.

The court found that Croonquist was engaged by plaintiffs to act as broker in connection with the sale or exchange of the motel; that Carter was the agent of Croonquist; that Carter erroneously identified a part of the acreage; that plaintiff relied upon the erroneous representation; that Carter knew or should have known the error; that the motel was equivalent in value to the property plaintiffs thought they were receiving and had a value of $17,000 more than the property actually received; that Carter was negligent in not ascertaining and describing the correct location of the 73 acres conveyed to plaintiffs; and that defendants were unjustly enriched in the sum of $8,500 paid them as a commission.

### DEFENDANTS' FIRST CONTENTION

The award of $17,000 damages was found to be the difference between the value of the motel and the value of the land received by plaintiffs.

Defendants argue without foundation, therefore, that the award was for the difference in value between the property shown and the property received, and that the court failed to consider the value of all the property which was received. Defendants' argument relies upon the evidence of an expert witness who testified as to the value of 60 acres received by plaintiffs and of the alternative 60 acres that plaintiffs thought they were receiving. As to the other 13 acres of the 73-acre total, plaintiffs received what they expected to receive. Implied in defendants' argument is the assumption that the value of the 13 acres, as to which there was no testimony, might have brought up the value of the 73 acres received to the value of the motel. As a further development of such reasoning, they say that the effect of the court's decision was to give plaintiffs the difference between what they received and what they expected to receive (benefit of the bargain rule) rather than the difference between what they received and what they parted with (the out-of-pocket rule).

While the testimony of the expert of the value of the 60 acres that Tackett thought he was getting was not material on the issue of damages under the out-of-pocket rule, no objection was made to the evidence. Being in the record, it could be

and was used as one step in the process of arriving at the difference in value between what was parted with and what was received by Tackett.

Tackett testified that the value of his equity in the motel was equal to the value of the 73 acres shown to him as what he would receive in exchange.

There was no direct evidence as to the value of the 13 acres, which is a constant in the equations. However, if the value of the 73 acres shown was equal to the value of the motel, and the value of 60 of those acres was $17,000 more than the value of 60 of those acres received, then the value of the 73 acres received must have been $17,000 less than the value of the motel.

### DEFENDANTS' SECOND CONTENTION

Plaintiffs defend the award of $8,500, being the amount of the commission paid by them, claiming:

1. That their failure to rescind the exchange agreement does not amount to an affirmation of the agreement to pay the commission, the two agreements being separate.

2. That if plaintiffs had not already paid the commission, defendants would not have been able to recover it.

3. That defendants should not be permitted to be unjustly enriched by retention of a commission paid to them by mistake under a contract they negligently failed to perform.

The only agreement in evidence as to the payment of a commission is that contained in plaintiffs' acceptance of the offer of exchange. The promise to pay the commission may be considered as distinct from the promise to exchange properties; otherwise there is no foundation for plaintiffs' assertion. There is mention in the escrow instructions of a commission to be paid by plaintiffs, but the escrow instructions attached to the pleadings and in evidence do not show the amount but refer to separate instructions that were not attached to the pleadings nor offered in evidence. There is no mention in the evidence of any other agreement, written or oral.

We must consider, therefore, some of the circumstances under which a broker loses his right to receive a commission or to retain a commission that has been paid.

In support of their appeal, defendants cite only *Kesslar* v. *Sapp*, 169 Cal.App.2d 818 [338 P.2d 34], to the effect that where a party stands upon a contract he may not rely upon an unjust enrichment theory. The cited authority presents the

corollary of that proposition: that where money has been paid under a contract unenforceable because of uncertainty, an action to recover the money may be brought upon a theory of unjust enrichment.

Plaintiffs' brief cites no authorities directed to defendants' second contention. The trial court, it may be assumed, received no greater assistance from counsel than is found in the briefs on appeal.

Plaintiffs argue that the promise to pay the commission was conditional upon the accomplishment of a specified result, in which case the rule stated in Restatement of the Law of Agency, section 448, page 1050, would control, to wit: "An agent whose compensation is conditioned upon his accomplishment of a specified result is entitled to the agreed compensation if, and only if, he is the effective cause of accomplishing the result."

The written agreement contains no such condition. Plaintiffs' position, if sustainable, must depend rather on the rule stated in section 469 of the Restatement, as follows: "An agent is entitled to no compensation for conduct which is disobedient or is a breach of his duty of loyalty; such conduct, if constituting a wilful and deliberate breach of his contract of service, disentitles him to compensation for even properly performed services for which no compensation is apportioned."

The quoted rule has received recognition where a broker, unknown to his principal, has been paid a commission by both parties to a sale or exchange. In such a situation, the danger is that the broker may secure a lower price for his principal's property in order to make it worthwhile for the other party also to pay a commission. In some jurisdictions, the principal has been allowed to recover the amount of both commissions. (See cases collected in 134 A.L.R. 1346.)

Such bad faith will defeat the broker's right to recover a commission (*Butler* v. *Solano Land Co.,* 203 Cal. 231 [263 P. 530]) and will permit the principal to recover a commission that has been paid (*Robson* v. *Hahn,* 98 Cal.App. 671 [277 P. 507]; *Caldwell* v. *Hahn,* 98 Cal.App. 797 [277 P. 509]). The broker will be denied recovery where his willful, knowing failure to obtain the best terms possible for the principal has not resulted in payment of a commission by the other party but in a greater commission from the principal. (*Mitchell* v. *Gould,* 90 Cal.App. 647 [266 P. 565].)

The rule is recognized in any situation where there has been

fraud or unfairness by the agent. (*Clark* v. *Millsap,* 197 Cal. 765, 785 [242 P. 918].)[1]

■ But negligence in the performance of his duties, where there is no disloyalty, fraud or bad faith, does not deprive an agent of all right to compensation. (*Estate of Kafitz,* 51 Cal. App. 325, 328, 330 [196 P. 790].)

Where fraud of a salesman of the corporate defendant caused loss to the client of the corporation, an award of the amount provided by section 3333, Civil Code, without return of commission paid was held the proper measure of damages; judgment for the additional amount of the commission was held error. (*Isaacs* v. *Frank Meline Co.,* 2 Cal.App.2d 341, 347 [37 P.2d 1045], hearing denied by Supreme Court.)

An analysis of the following decisions indicates that the return of commission paid was not an element of the damages allowed against a broker guilty of intentional misrepresentation, of having obtained a secret profit, or of active disloyalty: *Earle* v. *Lambert,* 205 Cal.App.2d 452, 456 [23 Cal.Rptr. 79] ; *Zikratch* v. *Stillwell,* 196 Cal.App.2d 535, 538, 539, 543 [16 Cal.Rptr. 660] ; *Jolton* v. *Minster Graf & Co.,* 53 Cal.App.2d 516, 522 [128 P.2d 101]. It may be assumed that in the three cases last cited the plaintiffs, at the very least, could have recovered the commissions paid had they not been made whole otherwise.

In the case at bench, the findings were that Carter was negligent; that he knew or should have known the error.

The possible inconsistency in the findings as to whether the judgment is based upon a finding that Carter knew the representation to be false (actual fraud) or made it negligently may be resolved. ■ There is no finding that the representation was made with intent to induce action, a necessary element of actual fraud. (*Estate of Benton,* 131 Cal. 472, 478 [63 P. 775].)

■ Viewed as having been made negligently, Carter's representations amounted to constructive rather than actual fraud. (*de Bairos* v. *Barlin,* 46 Cal.App. 665, 670 [190 P. 188] ; Civ. Code, § 1573; *Lillie* v. *Andrews,* 24 Cal.App. 10 [139 P. 1081].)

There is lacking, therefore, the element of bad faith, disloyalty, or conscious, deliberate wrongdoing that would deprive an agent of the right to compensation under section 469 of the Restatement.

---

[1] In *Clark* v. *Millsap,* an attorney's fee was allowed because opposing counsel did not object to the allowance.

The judgment is modified so as to eliminate the item of $8,500; as so modified the judgment is affirmed. Each party shall bear its own costs.

Brown, P. J., and Coughlin, J., concurred.