[Civ. No. 45102. First Dist., Div. Three. Apr. 15, 1980.]

SIERRA PACIFIC INDUSTRIES, Plaintiff and Respondent, v. JOSEPH H. CARTER, Defendant and Appellant.

**COUNSEL**

Abby Abinanti, Amos Tripp and Abinanti & Tripp for Defendant and Appellant.

Francis B. Mathews for Plaintiff and Respondent.

**OPINION**

**RHODES, J.**[*]—Joseph H. Carter, a licensed California real estate broker for the past 26 years, appeals an order of the trial court granting respondent Sierra Pacific Industries' motion for a new trial in an action involving the sale of real property.

During the fall of 1975, Sierra Pacific purchased, for a lump sum, various timberlands and six other pieces of real property, including the

---

[*]Assigned by the Chairperson of the Judicial Council.

subject of this dispute, a ten-acre parcel in Willow Creek on which five duplexes and two single family units are located.

After the acquisition, Sierra Pacific requested Carter's assistance in selling the nontimberland properties, including the Willow Creek parcel. Carter was familiar with the property, having participated in efforts to sell it to others prior to its purchase by Sierra Pacific. Acting in reliance on Carter's representation as to the value of the Willow Creek parcel, Sierra Pacific commissioned him to sell it for an asking price of $85,000, of which Sierra Pacific would receive $80,000 and Carter, $5,000. The trial testimony was in conflict over whether, if Carter were able to find a buyer willing to pay more than $85,000, the excess was to be equally divided or whether it would go entirely to Carter under a net listing agreement.

Although the parties entered into an oral agreement, no writing was prepared memorializing the agreement nor could notes about the agreement taken by Sierra Pacific's treasurer be located for use at trial. Pursuant to the agreement, appellant showed the Willow Creek property to several prospective buyers but was for a time unable to secure a sale at the asking price of $85,000. Finally, in June of 1976, Carter sold the property for that amount to his daughter and son-in-law, Debbie and David Benson and, by his own admission, retained a $5,000 commission without informing respondent of his relationship to the buyers.

Sierra Pacific instituted a fraud action against Carter based on the foregoing facts. The jury impaneled to hear the matter returned a general verdict in Carter's favor. Judgment was entered accordingly. Thereafter Sierra Pacific moved for a new trial. The motion was granted as to all issues and on all grounds asserted: inadequacy of damages, insufficient evidence and verdict against the law. Carter appeals, claiming that the order granting the new trial cannot be sustained on any of the grounds enumerated.

We begin with a review of the substantive law. An agent bears a fiduciary relationship to his or her principal which requires, among other things, disclosure of all information in the agent's possession relevant to the subject matter of the agency (1 Witkin, Summary of Cal. Law (8th ed. 1973) p. 704). An agent may not compete with the principal, nor may he or she act as agent for another whose interests conflict with those of the principal. (*Id.*, at pp. 705-706.)

In the context of an agreement to sell land on another's behalf, the general duties inherent in every agency become more specific. A real es-

tate agent must refrain from dual representation in a sale transaction unless he or she obtains the consent of both principals after full disclosure. (*Loughlin* v. *Idora Realty Co.* (1968) 259 Cal.App.2d 619, 629 [66 Cal.Rptr. 747].) This means under most circumstances that if the agent is related to the buyer in a way which suggests a reasonable possibility that the agent him or herself could indirectly be acquiring an interest in the subject property, the relationship is a "material fact" which must be disclosed. (*Id.* at p. 631.)

■ There is no question that Carter concealed information material to this transaction from his principal, Sierra Pacific. He claims he was exempted from the disclosure requirement, however, on the basis of a so-called "net listing." Under a net-listing agreement the seller agrees to take a fixed sum of money for his property and the broker is entitled to all additional sums as his commission. It is true that under this type of arrangement, a broker may not be obligated to disclose any relationship he has to the buyer. (*Allen* v. *Dailey* (1928) 92 Cal.App. 308, 313 [268 P. 404].) The exception, however, has no applicability to the undisputed facts present here.

In order to exempt a broker from the strict requirement of disclosure a real estate sales agreement must include a net sale price determined by the seller *without influence by the agent.* (*Loughlin* v. *Idora Realty Co., supra,* 259 Cal.App.2d 619, 627, citing *Pascal* v. *Cotton* (1962) 205 Cal.App.2d 597, 600 [23 Cal.Rptr. 357]. See 3 Augustine & Zarrow, Cal. Real Estate Law and Practice (1978) § 63.21[5].)

Here, uncontradicted evidence shows that Sierra Pacific officials agreed to the $85,000 figure based on an estimate Carter made at their request. It is irrelevant whether $85,000 represented a fair price, or whether the officials also relied in part on their own recent experience in acquiring the property. "It cannot be overemphasized that the key factor in permitting the real estate broker this relief [provided under the net listing exception] is the independent and completely uninfluenced determination of the net sales price by the seller." (1 Miller & Starr, Current Law of Cal. Real Estate (1975) § 2:12.)

■ It thus is evident that Carter owed a duty of disclosure to his principal, Sierra Pacific. It is equally evident that the duty was breached. Given duty and breach, a minimum of $5,000 in damages to Sierra Pacific flows automatically. Apart from any actual and proximately caused loss on the price it received for its property, Sierra

Pacific was entitled to recover the commission it paid to Carter. "...
[A] real estate broker must act in good faith in the discharge of his du-
ties as agent...[B]y misconduct, breach of conduct [*sic*] or wilful
disregard, in a material respect, of an obligation imposed upon him by
the law of agency he may forfeit his right to compensation." (*Baird* v.
*Madsen* (1943) 57 Cal.App.2d 465 at p. 475-476 [134 P.2d 885].) In a
case closely analogous to the one at bar, for example, breach of the
duty of full disclosure was held to deprive respondent real estate
brokers of their right to a commission. (*Bate* v. *Marsteller* (1959) 175
Cal.App.2d 573, 583 [346 P.2d 903]. See also Rest.2d Agency (1958)
§ 469.)

We thus are led to the inescapable conclusion that Carter is liable to
Sierra Pacific as a matter of law for a minimum of $5,000 and that the
jury's verdict to the contrary was in error. We turn to consider the
order for new trial.

■ In granting a motion for a new trial, Code of Civil Procedure
section 657 requires that a trial court specify the ground or grounds on
which the motion is granted and also its reason or reasons for finding
each ground justified (*Mercer* v. *Perez* (1968) 68 Cal.2d 104, 115-116
[65 Cal.Rptr. 315, 436 P.2d 315]; *Scala* v. *Jerry Witt & Sons, Inc.*
(1970) 3 Cal.3d 359, 363-364 [90 Cal.Rptr. 592, 475 P.2d 864]). If the
order can be upheld on any of the grounds asserted, the inadequacy of
the others is irrelevant. (*Treber* v. *Superior Court* (1968) 68 Cal.2d
128, 133 [65 Cal.Rptr. 330, 436 P.2d 330]; *In re Marriage of Beilock*
(1978) 81 Cal.App.3d 713, 727 [146 Cal.Rptr. 675].) Here, the order
must be upheld because the jury's improper verdict was against the law,
and was not supported by substantial evidence. (*Kralyevich* v. *Magrini*
(1959) 172 Cal.App.2d 784, 789 [342 P.2d 903].) Indeed, it is apparent
that the evidence here would have justified a partial directed verdict
against Carter as to duty, breach and a minimum of $5,000 in damages.

The order granting a new trial is therefore affirmed with instructions
to the court below to direct a verdict against defendant as to both duty
and breach. The only triable issue remaining concerns the extent of
plaintiff's damages.

Scott, Acting P. J., and Feinberg, J., concurred.

A petition for a rehearing was denied May 14, 1980, and appellant's
petition for a hearing by the Supreme Court was denied June 11, 1980.
Tobriner, J., did not participate therein.