990 F.2d 1256
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
CITY OF SAN JOSE, Plaintiff-Appellee,
v.
Price WATERHOUSE, Defendant-Appellant.
 No. 91-16489.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 4, 1993.
Decided March 23, 1993.
 
 Before ALARCON, RYMER and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 On September 20, 1984, San Jose ("City") brought action against Price Waterhouse and thirteen securities dealers, claiming that the dealers had entered into numerous high risk investments contrary to city policy and that Price Waterhouse, the City's independent accounting firm, had breached its audit contract and its professional duties in failing to report the transactions to the Mayor and the City Council. The City suffered losses of approximately sixty million dollars when it liquidated a portion of its investment portfolio.
 
 
 3
 The City settled with all thirteen securities dealers, eleven prior to trial, and two after verdicts were returned. The jury returned a verdict of $517,669 against Price Waterhouse, which included $73,650 for auditing fees paid by the City. Price Waterhouse appeals the district court's failure to allow an offset of the jury verdict with the previous settlements. As this case involves the clear application of law to the facts established at trial, we apply the de novo standard of review. See Federal Sav. and Loan Ins. Corp. v. Butler, 904 F.2d 505, 510 (9th Cir.1990) (reviewing de novo whether the district court properly construed state law regarding offset under § 877).[1]
 
 
 4
 The claims against Price Waterhouse were pendent to federal securities claims against the securities dealers, thus California law is applicable. In the absence of relevant California law, we rely on several pertinent cases from this and other circuits.
 
 
 5
 Price Waterhouse relies on two theories: (1) Cal.Civ.Proc.Code § 877[2] and (2) the common law principle of one satisfaction for one injury. We affirm the district court's holding that Cal.Civ.Proc.Code § 877 is inapplicable when contract claims are mixed with tort claims. See County of Los Angeles v. Superior Court of Los Angeles County, 155 Cal.App.3d 798, 803 (Cal.Ct.App.1984) (Section 877 "appl[ies] only to joint tortfeasors"), overruled on other grounds by Bay Dev., Ltd. v. Superior Court of San Diego, 791 P.2d 290 (Cal.1990) (en banc). Section 877 is therefore inapplicable to the instant case.
 
 
 6
 The City is entitled to only one satisfaction for a single injury. See Franklin v. Kaypro Corp., 884 F.2d 1222, 1231 (9th Cir.1989), cert. denied, 111 S.Ct. 232 (1990). An offset is available where the settlement and the jury verdict represent common damages. See Singer v. Olympia Brewing Co., 878 F.2d 596, 600 (2d Cir.1989), cert. denied, 493 U.S. 1024 (1990). The district court held there was an insufficient basis for finding that the damages awarded were common, and denied Price Waterhouse's motion for an offset.
 
 
 7
 The district court erred in concluding that Price Waterhouse failed to make a prima facie showing of entitlement to an offset under the single satisfaction rule. There is some commonality in damages. The Complaint alleges that Price Waterhouse and all of the securities dealers were responsible for losses associated with San Jose opens entered into and for longer-term securities purchased by the City. Price Waterhouse was charged with being responsible for part of the same portfolio for which the settling securities dealers were responsible.
 
 
 8
 At trial, the City limited Price Waterhouse's exposure to September 13, 1983 to May 22, 1984, a time period also encompassed in the Complaint against the securities dealers. During this period, Price Waterhouse was alleged to be responsible for all of the portfolio decline, as were the dealers. There was an overlap, therefore, of at least a portion of the damages claimed against Price Waterhouse, and the burden then shifted to the City to demonstrate that the settlements did not overlap the same portion of damages for which Price Waterhouse was held responsible. Complete commonality was not required in order to shift the burden to the City. See U.S. Indus., Inc. v. Touche Ross & Co., 854 F.2d 1223, 1262 (10th Cir.1988) ("[i]f the defendants make [a showing that the plaintiff settled claims with others on which the non-settling defendants were found liable at trial], the burden then shifts to the plaintiff to prove that, under the terms of its agreement with the settling defendants, the settlement did not represent common damages with the jury award").
 
 
 9
 The City argues that there can be an offset for settlements only when the full amount of a plaintiff's damages have been litigated and decided. While the City's contention is consistent with the general principles underlying the single recovery rule and finds some support in Milicevich v. Sacramento Medical Center, 155 Cal.App.3d 997 (1984), the question here is not whether the City has actually recovered damages in excess of compensation for the full injury it has suffered, but rather, which party--the City or Price Waterhouse--bears the loss when the full measure of the City's damages has not been ascertained and the precise allocation of these damages among Price Waterhouse and its co-defendants is uncertain. See Singer, 878 F.2d at 599-600 (rejecting plaintiff's argument that where a plaintiff may be entitled to more damages from one defendant than from another, the one satisfaction rule should require that the settlement be deducted, not from the amount to be recovered under the judgment but from the highest amount of "provable damages" that could have been recovered against the settling defendants).
 
 
 10
 The City also argues that since there was more than a single injury, Price Waterhouse is not entitled to an offset. Ash v. Mortenson, 24 Cal.2d 654 (1944) (finding two separate injuries, and thus two distinct causes of action, where negligent medical care followed an automobile accident), upon which the City relies, is distinguishable because the City's complaint here points to only one injury--harm to the City's investment portfolio.
 
 
 11
 The City finally claims that Price Waterhouse failed to offer evidence and to request appropriate instructions regarding offset from the district court and thus waived the right to request an offset post-judgment. This argument was rejected by Knox. 109 Cal.App.3d at 834-35 ("especially in jury cases, the defendant should not be required to prejudice its defense by disclosing substantial settlements by co-defendants ... there is ample precedent for deferring the offset issue until after the determination of the merits"); accord May v. Miller, 228 Cal.App.3d 404, 407, 409 (1991). The case relied upon by the City, Hammer v. Gross, 932 F.2d 842, 847-49 (9th Cir.), cert. denied, 112 S.Ct. 582 (1991), has no application here.[3] "
 
 
 12
 The City failed to present evidence that there was no overlap. In addition, nothing in the settlement agreements indicated that the settled damages were totally separate from the time period and type of damages for which Price Waterhouse was held responsible. We hold that Price Waterhouse is entitled to an offset for a portion of the jury award.
 
 
 13
 Price Waterhouse argues that the award of its audit fees should be included in the amount subject to an offset. We affirm the district court's holding that Price Waterhouse is not entitled to an offset for its audit fees. The jury verdict regarding the reimbursement of the audit fees results directly from the services Price Waterhouse rendered to the City and not from losses associated with the bad investments for which the other defendants were arguably liable. Therefore, the amount of offset is limited to $444,019 ($517,669 minus $73,650).
 
 
 14
 The district court decision is AFFIRMED IN PART and REVERSED IN PART and REMANDED for entry of an amended judgment.
 
 
 15
 No costs allowed.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Citing U.S. Industries, Inc. v. Touche, Ross & Co., 854 F.2d 1223, 1263 (10th Cir.1988); United States v. Thomas, 863 F.2d 622, 625 (9th Cir.1988), and United States v. McConney, 728 F.2d 1195, 1202 (9th Cir.), cert. denied, 469 U.S. 824 (1984), the City argues that due to the complexity and scope of the proceedings at the trial level and the district court's "factual analysis" of the various claims that the City held against Price Waterhouse, the deferential, clearly erroneous standard should apply. This argument is without merit
 
 
 [2]
 Section 877 states in relevant part:
 Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights, it shall have the following effect:
 (a) It shall not discharge any other such party from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant
 * * *
 
 
 [3]
 Citing FRAP 28(e) and Ninth Circuit Rule 28-2.8, the City contends that Price Waterhouse's failure to provide appropriate citations to the record in its opening brief also constitutes a waiver of its right to appeal the issue of a right to a credit. The City does not challenge specifically any of the facts contained in Price Waterhouse's brief, nor does the City argue that it is somehow prejudiced by the claimed absence of citations to the record